UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

| | |
|---|---|
| MARY S. ANDREE, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:10-cv-1185 |
| ) | |
| v. ) | Honorable Gordon J. Quist |
| ) | |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Defendant. ) | |
| _____) | |

This is a social security action brought under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security denying plaintiff's claim for disability insurance benefits (DIB). On July 24, 2007, plaintiff filed her application for benefits alleging an August 15, 2002 onset of disability. (A.R. 97-103). She later amended her claim to allege a September 17, 2007 onset of disability. (A.R. 118). Plaintiff's disability insured status expired on September 30, 2007. Thus, it was plaintiff's burden on her claim for DIB benefits to submit evidence demonstrating that she was disabled on or before September 30, 2007. *See Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

Plaintiff's claim for DIB benefits was denied on initial review. (A.R. 58-62). On November 24, 2009, she received a hearing before an administrative law judge (ALJ), at which she was represented by counsel. (A.R. 27-55). On February 25, 2010, the ALJ issued a decision finding that plaintiff was not disabled. (A.R. 13-21). On October 4, 2010, the Appeals Council denied review (A.R. 1-3), and the ALJ's decision became the Commissioner's final decision.

On December 1, 2010, plaintiff filed her complaint seeking judicial review of the Commissioner's decision denying her claim for DIB benefits. Plaintiff asks the court to overturn the Commissioner's decision on the following grounds:

1. The hypothetical question posed to the vocational expert "did not include an additional factor that was later added in the decision;"

2. The RFC for simple and routine tasks did not "accurately describe a claimant with a 'severe' impairment of bipolar disorder;"

3. The ALJ's decision "did not accurately reflect" plaintiff's "mild" difficulties in social functioning and "moderate" difficulties in concentration, persistence, or pace.

(Plf. Brief at 3, 5, 7, docket # 12). Alternatively, plaintiff asks that this matter be remanded to the Commissioner under sentence six of 42 U.S.C. § 405(g) in light of the decision in December 2010 awarding plaintiff supplemental security income (SSI) benefits. (Plf. Brief at 12-13). Upon review, I find that plaintiff's arguments do not provide a basis for disturbing the Commissioner's decision. I further find that plaintiff has not carried her statutory burden to remand this case to the Commissioner under sentence six of section 405(g). I recommend that the Commissioner's decision be affirmed and that plaintiff's request for an order remanding this matter to the Commissioner under sentence six of 42 U.S.C. § 405(g) be denied.

**Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003).

**Discussion**

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from September 17, 2007, through September 30, 2007, but not thereafter. (A.R. 15). Plaintiff had not engaged in substantial gainful activity on or after September 17, 2007. (A.R. 15). Through her date last disability insured, plaintiff had the following severe impairments: "degenerative disc disease - lumbar spine; osteoarthritis of the left knee; and bipolar disorder." (A.R. 15). Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (A.R. 16). The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform work limited to lifting 20 pounds occasionally and 10 pounds frequently; sitting for up to 6 hours and standing or walking for 2 hours in an 8 hour day with normal breaks; no climbing on ladders, ropes or scaffolds, no kneeling and no crawling; occasional climbing on stairs or ramps, stooping and crouching; frequent balancing; and only simple, repetitive and routine tasks.

(A.R. 17). The ALJ found that plaintiff's testimony regarding her subjective limitations was not fully credible. (A.R. 17-19). Plaintiff was unable to perform her past relevant work as a pain clinic's director of clinical operations. (A.R. 19). Plaintiff was 45-years-old as of her date last disability insured. Thus, at all times relevant to her claim for DIB benefits, plaintiff was classified as a younger individual. (A.R. 20). Plaintiff has at least a high-school education and is able to communicate in English. (A.R. 20). The transferability of job skills was not material to a disability determination. (A.R. 20). The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age, and with her RFC, education, and work experience, the VE testified that there were approximately 15,500 jobs in the

State of Michigan that the hypothetical person would be capable of performing. (A.R. 49-52). The ALJ found that this constituted a significant number of jobs. Using Rule 202.21 of the Medical-Vocational Guidelines as a framework, the ALJ held that plaintiff was not disabled. (A.R. 20-21).

### 1.

Plaintiff argues that the ALJ's decision is not supported by substantial evidence, because the ALJ's hypothetical question to the VE limited plaintiff to "simple, routine tasks" rather than "simple, repetitive and routine tasks" as specified in the ALJ's factual finding regarding plaintiff's RFC. (Plf. Brief at 3-5). Upon review, I find that the minor defect in the ALJ's hypothetical question was harmless error, because the jobs the VE identified in his response were repetitive work jobs.

The ALJ found that plaintiff was not disabled at step 5 of the sequential analysis,[1] because as of her date last disability insured she was capable of performing a substantial number of jobs in the regional economy performing general clerical, inspector, and assembler jobs. (A.R. 20-21). It is the Commissioner's burden at step 5 of the sequential analysis to show that the plaintiff

---

[1]"Administrative law judges employ a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Social Security Act." *Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). Under the sequential analysis, "The claimant must first show that she is not engaged in substantial gainful activity. Next, the claimant must demonstrate that she has a 'severe impairment.' A finding of 'disabled' will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and 'meets or equals a listed impairment.' If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work." *White v. Commissioner*, 572 F.3d 272, 282 (6th Cir. 2009).

possesses the capacity to perform other substantial gainful activity that exists in the economy. 20 C.F.R. § 404.1520(g); *see White v. Commissioner*, 572 F.3d at 282. The ALJ can satisfy this burden through a VE's response to a hypothetical question accurately portraying the individual's physical and mental impairments. *See Varley v. Secretary of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). The defect in this case is that the ALJ's RFC finding limited plaintiff to "simple, repetitive and routine" tasks, but his hypothetical question to the VE limited plaintiff to "simple, routine" tasks:

> Q   So, Ms. Rowe, if we're just starting with those physical limitations, of course, that would rule out any full-time work with those unscheduled breaks up to three or four hours out of an eight-hour workday. And then, she had testified that she doesn't think she would have been able to work around other people in a job situation, or keep her focus for even simple, routine tasks, which, of course, would also rule out any competitive work?
>
> A   It would.
>
> Q   We have some restrictions from Dr. Kidwa[i], but before I get to those, we have the assessment from the State Agency in Exhibit 12F from their physician about the physical limitations for a limited range of light work within the usual definition for lifting up to 20 pounds occasionally or 10 pounds frequently; being on her feet or sitting six hours of eight; plus never climbing ladders, ropes, or scaffolds, kneeling, or crawling. With those limitations, could she perform her former work?
>
> A   Yes. That's compatible with light.
>
> \* \* \*
>
> Q   Going back to Exhibit 12F, of course, you said she could perform her former work with those physical limitations; but if we combine those physical limitations with simple, routine tasks only, then, of course, that would rule out the former skilled work?
>
> A   Yes.
>
> Q   And what other light jobs could she perform with that combination of restrictions?

> A With that combination, there would be also some assembler positions, and there would be about 5,500; and there would be some inspection positions, 4,000; and there would be some general clerk positions, 6,000 of those.
>
> Q Any conflict with the *Dictionary of Occupational Titles* as far as how the other jobs you've cited would be concerned?
>
> A No.

(A.R. 49-52).

The court must determine whether the ALJ's omission of the word "repetitive" in his hypothetical question constitutes harmless error.[2] Plaintiff argues that although including the term repetitive "may not rule out any of the assembler positions," it would have an impact on the number of general office clerk and inspection positions because they "are not necessarily repetitive." (Plf. Brief at 5). Plaintiff's argument does not undermine the Commissioner's decision because the 5,500 assembler jobs alone provide substantial evidence supporting the ALJ's finding that plaintiff was not disabled. *See Lee v. Sullivan*, 988 F.2d 789, 794 (7th Cir. 1993) (1,400 is a significant number and collecting cases where as few as 174 positions were found to be a significant number); *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988) (1,350 is a significant number); *Martin v. Commissioner*, 170 F. App'x 369, 375 (6th Cir. 2006) (870 jobs is a significant number); *see also Anderson v. Commissioner*, 406 F. App'x 32, 35 (6th Cir. 2010); *Nejat v. Commissioner*, 359 F. App'x 574, 579 (6th Cir. 2009) (collecting cases holding that as few as 500 jobs constituted a significant number).

---

[2]Harmless error analysis applies in this context. *See Potter v. Commissioner*, 223 F. App'x 458, 463-64 (6th Cir. 2007); *see also Wilson v. Commissioner*, 280 F. App'x 456, 460-61 (6th Cir. 2008); *Griffeth v. Commissioner*, 217 F. App'x 425, 428-29 (6th Cir. 2007); *accord Kornecky v. Commissioner*, 167 F. App'x 496, 507 (6th Cir. 2006) ("No principle of administrative law or common sense requires [this court] to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result.") (quoting *Fisher v. Bowen*, 869 F.3d 1055, 1057 (7th Cir. 1989)).

Further, *DOT* classifications (*See* Def. Brief at 16, ID# 961) establish that inspection work is generally "repetitive" in nature. I find that the ALJ's omission of the word "repetitive" from his hypothetical question was harmless, and that the ALJ's decision finding that plaintiff was not disabled is supported by substantial evidence.

**2.**

Plaintiff alleges a September 17, 2007 onset of disability. Her disability insured status expired thirteen days later, on September 30, 2007. It was plaintiff's burden to submit evidence demonstrating that she was disabled before the end of this extraordinarily brief period. *See Moon v. Sullivan*, 923 F.2d at 1182. The ALJ found that, as of her date last disability insured, plaintiff retained the RFC for a limited range of light work. Plaintiff disagrees with the mental impairment component of the ALJ's factual finding regarding her RFC, [3] which restricted her to simple, repetitive and routine tasks. Plaintiff argues: (A) that the ALJ's factual finding failed to "accurately describe a claimant with a 'severe' impairment of bipolar disorder;" and (B) that the RFC "did not accurately reflect" the ALJ's step 3 findings that plaintiff had "mild" difficulties in social functioning and "moderate" difficulties in concentration, persistence or pace. (Plf. Brief at 5-11; Reply Brief at 3-5). Upon review, I find that plaintiff's arguments do not provide a basis for disturbing the Commissioner's decision.

---

[3] Plaintiff has not disputed the ALJ's finding regarding the physical limitations component of her RFC.

      A.      <u>The Mental Abilities Component of Plaintiff's RFC</u>

RFC is the most, not the least, a claimant can do despite her impairments. 20 C.F.R. § 404.1545(a); *see Kornecky v. Commissioner*, 167 F. App'x at 499. RFC is an administrative finding of fact reserved to the Commissioner. 20 C.F.R. § 404.1527(e)(2); *see Deaton v. Commissioner*, 315 F. App'x 595, 598 (6th Cir. 2009); *Ford v. Commissioner*, 114 F. App'x 194, 198 (6th Cir. 2004). "In formulating a residual functional capacity, the ALJ evaluates all the relevant medical and other evidence and considers what weight to assign to treating, consultative, and examining physicians' opinions." *Eslinger v. Commissioner*, No. 10-3820, 2012 WL 616661, at * 2 (6th Cir. Feb. 27, 2012). Here, the ALJ observed that plaintiff presented no medical evidence of a mental impairment for the narrow period in late September 2007 at issue. (A.R. 18). The ALJ found that plaintiff's testimony regarding her functional restrictions was not fully credible:

> The psychological condition is also somewhat vague and not as severe as the claimant suggests. There is no doubt the claimant has reason for some depression, given her personal history (Exhibits 1F/2; 19F)[A.R. 206, 650-702]. It also appears from the longitudinal perspective of the medical evidence that the claimant has intermittent problems with depression, requiring some treatment.[4] But it is not the case that she has these symptoms to a disabling level. In fact, no treating provider offered that opinion or anything like it.
>
> The claimant's presentation of her physical and psychological history and condition is unreliable. It was noted in 2004 that she was "clever" at presenting her own version of the facts to achieve her goals (Exhibit 1F/8)[A.R. 212]. She noted in October 2007 that her recent MRI findings were "worse" than before (Exhibit 3F/72)[A.R. 375], when in fact they were unchanged (Exhibit 3F/66, 76)[A.R. 369, 379]. This would also undercut the assertion at the hearing that the September 2007 MRI serves as the basis for onset of disabling back problems.

---

[4] Plaintiff was hospitalized in January 2002, February 2004, May 2008, and November 2008 on the basis of her daughter's reports of suicide attempts. (A.R. 206-23, 305-17, 550-76, 652-702). The diagnosis of bipolar disorder rather than depression arose out of the last hospitalization (A.R. 652-53), which took place over one year after the expiration of plaintiff's insured status.

> Other reasons for questioning the reliability of the claimant's assertions include the fact that at one point, the evaluating doctor questioned whether the claimant truly attempted suicide (ibid, at 2). She argued with her providers about her problems and treatment (Exhibit 24F/23)[A.R. 796]. One doctor was of the opinion that the problems were a combination of mental health issues and prescription medication addiction (Exhibit 1F/8)[A.R. 212] and another later diagnosed opioid dependence (Exhibit 16F/3)[A.R. 551]. It is noteworthy that the claimant sometimes denied depression or suicidal tendencies (Exhibit 1F/6; 16F/2)[A.R. 210, 550]. It is also relevant that the claimant seemed to have a number of versions of why she stopped working, reporting that she was fired due to being unable to remember instructions (Exhibit 2E/2)[A.R. 123], or quit because of her sister's illness (Exhibit 6E)[A.R. 164] or at least partially because she was demoted (Exhibit 1F/2)[A.R. 206].
>
> Taking all the medical evidence of record into consideration, there is insufficient evidence to find that the claimant has any functional impairment beyond that contained in the residual functional capacity, as far as the period between the amended alleged onset date and her date last insured. This is further supported by the State medical evaluations (Exhibits 8F; 10F; 12F)[A.R. 420-23, 425-38, 440-47], which are given significant weight and form the basis for the specific limitations in the residual functional capacity. . . . [T]here is no evidence that the claimant's functional status during the relevant period was any more restricted than as noted above.

(A.R. 19). Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987); *see also Reynolds v. Commissioner*, 424 F. App'x 411, 417 (6th Cir. 2011). It is the ALJ's function to determine credibility issues. *See Siterlet v. Secretary of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). The court does not make its own credibility determinations. *See Walters*, 127 F.3d at 528. I find that the ALJ's factual finding regarding plaintiff's credibility is supported by more than substantial evidence.

Plaintiff argues that the ALJ's factual finding regarding her RFC failed to accurately describe her "'severe' impairment of bipolar disorder." (Plf. Brief at 5). Plaintiff does not attempt to engage the ALJ's finding regarding her credibility. Instead, she argues that the ALJ's RFC finding "confuse[d] work skills with mental abilities." (Plf. Brief at 6). Plaintiff attempts to support her

argument with citations to 20 C.F.R. § 404.1568 and § 404.1445(c)[5]. (Plf. Brief at 6). Section 404.1568 explains how a claimant's work skills are utilized in determining the existence of work in the economy that a claimant is capable of performing. The ALJ's opinion reveals that he clearly understood the distinctions between unskilled and skilled work and that he did not "confuse" plaintiff's work skills with the mental abilities component of her RFC:

> The claimant had past relevant work as the director of clinical operations for a pain clinic (Exhibit 20F/13; testimony)[A.R. 31-33, 715]. Based on the description of the work and the testimony of the vocational expert, the past work was skilled. In this case, the residual functional capacity only allows for simple, repetitive and routine work, which would be inconsistent with the skilled work as performed in the past. Accordingly, the claimant was unable to perform past relevant work.

(A.R. 19). The ALJ recognized that the transferability of plaintiff's work skills was not material to a determination of disability. (A.R. 20).

Section 404.1545(c) describes the RFC's mental abilities component:

> (c) *Mental abilities*. When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers and work pressures in a work setting, may reduce your ability to do past work and other work.

20 C.F.R. § 404.1545(c). The ALJ found that the opinions expressed by State Agency Psychologist Fred Greaves regarding plaintiff's mental abilities were persuasive, and he gave them significant weight. (A.R. 19, 419-23). Greaves stated that plaintiff was not significantly limited in her ability to understand, remember, and carry out very short and simple instructions. She was able to sustain an ordinary routine without special supervision and could make simple work-related decisions.

---

[5]Plaintiff's citation to section 404.1445(c) appears to be a typographical error. No such section exists. I assume that plaintiff was referring to section 404.1545(c), the regulation applicable to the RFC's mental abilities component.

There was no evidence of limitation in plaintiff's ability to work in coordination with or in proximity to others without being distracted by them. Plaintiff was not significantly limited in social interaction. Plaintiff was not significantly limited in her ability to respond appropriately to changes in work setting. (A.R. 420-22). Greaves observed, "Presently, [activities of daily living] ADLs indicate that the [claimant] is able to manage personal hygiene, simple food prep[aration], light household chores, daily walks, some child care, shopping, money management, reading, TV, some socializing, fair attention, no problems [with] written or verbal instructions and no problems dealing [with] authority." (A.R. 422). Psychologist Greaves stated that plaintiff was capable of performing simple, routine tasks. (A.R. 419). No psychiatrist, psychologist, or other medical care provider offered a contrary opinion. The ALJ found that as of her date last disability insured, plaintiff retained the RFC for simple, repetitive and routine tasks. I find that the ALJ's factual finding regarding the mental component of plaintiff's RFC is supported by substantial evidence.

### B.     Step 3 of the Sequential Analysis

Plaintiff argues that the ALJ's formulation of her RFC was inadequate because it failed to take into account the ALJ's own findings that plaintiff had moderate restriction in activities of daily living and mild difficulties in social functioning. (Plf. Brief at 7-11). Plaintiff's argument is meritless. It conflates the ALJ's findings at distinct stages of the sequential analysis, ignores the ALJ's credibility determination, and disregards the more carefully calibrated nature of the ALJ's factual finding regarding her RFC.

The administrative finding whether a claimant meets or equals a listed impairment is made at step 3 of the sequential analysis. *See* 20 C.F.R. § 404.1520(a)(4)(iii); *see also Coldiron*

*v. Commissioner*, 391 F. App'x 435, 438 (6th Cir. 2010). Step 3 regulates a "narrow category of adjudicatory conduct." *Combs v. Commissioner*, 459 F.3d 640, 649 (6th Cir. 2006) (*en banc*). It "governs the organization and evaluation of proof of listed impairments that, if supported, renders entitlement to benefits a foregone conclusion." *Id.* "Claimants are conclusively presumed to be disabled if they suffer from an infirmity that appears on the [Social Security Administration's] SSA's special list of impairments, or that is at least equal in severity to those listed. The list identifies and defines impairments that are of sufficient severity as to prevent any gainful activity. A person with such an impairment or an equivalent, consequently, necessarily satisfies that statutory definition of disability." *Id.* at 643 (internal citations omitted). It is well established that a claimant has the burden of demonstrating that she satisfies all the individual requirements of a listing. *See Elam*, 348 F.3d at 125. "If all the requirements of the listing are not present, the claimant does not satisfy that listing." *Berry v. Commissioner*, 34 F. App'x 202, 203 (6th Cir. 2002). "It is insufficient that a claimant comes close to satisfying the requirements of a listed impairment." *Elam*, 348 F.3d at 125. By contrast, the administrative finding of a claimant's RFC is made between steps 3 and 4 of the sequential analysis and it is applied at steps 4 and 5. *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity. We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."); *see also Vorholt v. Commissioner*, 409 F. App'x 883, 886 (6th Cir. 2011).

The ALJ determined at step 3 of the sequential analysis that plaintiff's impairments did not meet or equal the requirements of any listed impairment:

> The claimant's mental impairment did not meet or medically equal the criteria of listing 12.04. In making this finding, the undersigned has considered whether the "paragraph B" criteria were satisfied.

* * *

> In activities of daily living, the claimant had moderate restriction. She is usually able to handle her own care (Exhibit 4E)[A.R. 139-46], though there is evidence that at times her personal care is minimal (Exhibit 24[F]/26)[A.R. 799].
>
> In social functioning, the claimant had mild difficulties. She is able to interact with her care providers and those around her when she chooses. She can accurately present a history of her medical care.
>
> With regard to concentration, persistence or pace, the claimant had moderate difficulties. The claimant is on narcotic medication and has been for a number of years (Exhibits 5F; 16F)[A.R. 403-17, 550-76], which at times has combined with her psychiatric medication to cause a decrease in her ability to maintain her focus and concentration (e.g., 3F/31)[A.R. 334].
>
> As for the episodes of decompensation, the claimant had experienced one or two episodes of decompensation, each of extended duration. The most obvious episode was an inpatient stay in November/December 2008 (Exhibit 19F)[A.R. 650-702].
>
> Because the claimant's mental impairment did not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria were not satisfied. The undersigned has also considered whether the "paragraph C" criteria were satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. She does not have a disease process resulting in such marginal adjustment that even a minimal increase in mental demands or change in environment would predictably cause decompensation. She does not have a history of one or more years' inability to function outside a highly supportive living arrangement.
>
> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listing in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

(A.R. 16-17). Plaintiff is not challenging the ALJ's step-3 finding that she did not meet or equal the requirements of any listed impairment. Rather, she is attempting to take a portion of the ALJ's finding with regard to the paragraph B criteria at step 3 out of context and substitute it for the ALJ's

-14-

factual finding that she retained the RFC for simple, routine and repetitive tasks. It is well established that the paragraph B criteria used at steps 2 and 3 of the sequential analysis "are not an RFC assessment." *Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96–8p (reprinted at 1996 WL 374184, at * 4 (SSA July 2, 1996)). "The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorder listings in 12.00 or the Listings of Impairments." *Id.* at 4; *see Tippett v. Commissioner*, No. 3:10-cv-1427, 2011 WL 6014015, at * 12 (D. Or. Dec. 2, 2011); *Reynolds v. Commissioner*, No. 10-110, 2011 WL 3897793, at * 3 (E.D. Mich. Aug. 19, 2011); *Johnson v. Astrue*, No. 3:09–cv–492, 2010 WL 3894098, at * 8 (M.D. Fla. Sept.30, 2010); *Olatubosun v. Astrue*, No. 8:09cv376, 2010 WL 3724819, at *13 (D. Neb. Sept. 17, 2010). The ALJ's step-3 findings do not undermine his finding that plaintiff retained the RFC for simple, repetitive and routine tasks.

**3.**

Plaintiff asks the court to remand this matter to the Commissioner under sentence six of 42 U.S.C. § 405(g) for consideration of a December 17, 2010 decision by the Social Security Administration, which granted plaintiff's October 12, 2010 application for SSI benefits. (docket # 12-2, ID# 945). Plaintiff has the burden under sentence six of 42 U.S.C. § 405(g) of demonstrating that the evidence she now presents in support of a remand is "new" and "material," and that there is "good cause" for the failure to present this evidence in the prior proceeding. *See Ferguson v.*

*Commissioner*, 628 F.3d 269, 276 (6th Cir. 2010); *Hollon ex rel. Hollon*, 447 F.3d 477, 483 (6th Cir. 2006). Plaintiff's request satisfies none of the statutory requirements.

In *Allen v. Commissioner*, 561 F.3d 646 (6th Cir. 2009), the Sixth Circuit held that a subsequent administrative decision awarding benefits does not satisfy the plaintiff's burden under sentence six: "[A] subsequent favorable decision itself, as opposed to the evidence supporting the subsequent decision, does not constitute new and material evidence under § 405(g)." 561 F.3d at 653. "Under sentence six, the mere existence of a subsequent decision in [plaintiff's] favor, standing alone, cannot be evidence that can change the outcome of his prior proceeding. A subsequent favorable decision may be *supported* by evidence that is new and material under § 405(g), but the decision is not itself new and material evidence." 561 F.3d at 653. The Sixth Circuit explained that consideration of the result achieved on a subsequent application for benefits as "new evidence" under sentence six would be inconsistent with the statutory purpose of a sentence-six remand and would be contrary to controlling Supreme Court precedent:

> If a subsequent favorable decision -- separated from any new substantive evidence supporting the decision -- could itself be "new evidence" under sentence six, the only way that it might change the outcome of the initial proceeding is by the power of its alternative analysis of the same evidence. But remand under sentence six is not meant to address the "correctness of the administrative determination" made on the evidence already before the initial ALJ. [*Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991)]. In addition, it is overly broad to read the words 'new evidence' in sentence six to include a subsequent decision based on the same evidence. In *Melkonyan*, the Court noted that the legislative history of § 405(g) shows that "Congress made it unmistakably clear that it intended to limit the power of district courts to order remands for 'new evidence' in Social Security cases.'" *Id.* at 100.

The mere fact of a favorable decision three years later cannot be deemed "new evidence" under these authorities. The only legitimate effect of the subsequent proceedings would arise from evidence considered in those proceedings that bears on plaintiff's condition on or before

September 30, 2007, her date last insured. Plaintiff offers no new medical evidence in support of her request for remand. Therefore, she has not carried her statutory burden to produce new and material evidence. *See Ferguson*, 628 F.3d at 276. I recommend that plaintiff's request for remand under sentence six of 42 U.S.C. § 405(g) be denied.

### Recommended Disposition

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed and that plaintiff's request for an order remanding this matter to the Commissioner under sentence six of 42 U.S.C. § 405(g) be denied.

Dated:  March 13, 2012          /s/  Joseph G. Scoville
                                United States Magistrate Judge

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). General objections do not suffice. *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).